IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PROVIDER MEDS, L.P. | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No. 3:09-cv-02410-P |
| | § | Jury Trial Demanded |
| TALYST INC., | § | |
| | § | |
| Defendant | § | |

**DEFENDANT TALYST, INC.'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

Defendant Talyst, Inc. ("Talyst") moves to dismiss Provider Meds, LP's ("Provider")

Complaint under Fed. R. Civ. P. 12(b)(6).

## I.     INTRODUCTION

This is precisely the type of case that the Supreme Court was concerned about in

*Twombly*.  The three causes of action in the Complaint are merely different ways of Provider

alleging that Talyst infringed upon its ONSITERX mark.  (See Amended Complaint [Dkt. No. 5]

("Complaint")).  The United States Patent and Trademark Office only registered the ONSITERX

mark on the supplemental register and thus it is only protected as a trademark upon proof it has

acquired secondary meaning.    (Complaint at ¶ 7).  Therefore, one of the critical elements of all

three of Provider's claims is to prove that the ONSITERX mark has acquired secondary meaning

in connection with Provider's goods and services in a particular geographic area prior to Talyst's

first use of the INSITE mark.

Provider has not made any substantive factual allegations supporting the conclusion that

the ONSITERX mark has acquired secondary meaning in any geographic area prior to the date

that Talyst has begun using the INSITE and INSITERX marks in that geographic area.  Instead,

it has only made general factual allegations about its use of the ONSITERX mark that are either

formulaic recitations of the required elements or that are merely consistent with a finding of secondary meaning. (See, e.g., Complaint at ¶¶ 7, 22, 34). Neither are sufficient to show that Provider's claim for relief has risen at least to the level of plausibility. As such, Provider has not stated a viable cause of action.

Provider's attempt to make numerous overly general allegations regarding essentially a single claim for trademark infringement is really just an attempt to distract the Court from the undisputed fact that Talyst has the exclusive right to use the federally-registered INSITE mark and that if there is any likelihood of confusion between Provider's use of its mark and Talyst's use of its INSITE mark (with or without the generic RX at the end of it) it is Provider that must necessarily be infringing upon Talyst's rights. Provider acknowledges that Talyst began using the INSITE mark in commerce at least by May of 2008. (Complaint at ¶8). Talyst's INSITE mark is federally registered on the principal register. (*Id*.). This means that, unlike Provider's ONSITERX mark, Talyst's INSITE mark is presumed to be inherently distinctive, valid, and exclusive to Talyst. 15 U.S.C. § 1115(a). In its trademark application for the ONSITE trademark, Provider does not allege a date of first use in commerce prior to October 24, 2008. *See* U.S. Reg. No. 3,726,808, courtesy copy attached as Ex. 1.[1] Since Provider was not even using the ONSITERX mark in commerce prior to Talyst's use of the INSITE mark, there is no way it can allege facts sufficient to establish that the ONSITERX mark had acquired secondary meaning prior to Talyst's first use of the INSITE mark in commerce.

Apparently recognizing Talyst's exclusive right to use the INSITE mark, Provider does not challenge this fact in its complaint. Instead, it attempts to achieve its goal without having to make any claim for relief or factual allegation regarding Talyst's right to use the INSITE mark

---

[1] The Court has the ability to take judicial notice of the contents of the trademark registration asserted to be infringed in the complaint. *Test Masters Educational Services v. Singh,* 428 F.3d 559, 570 Fn. 2 (5th Cir. 2005) (Federal Courts are permitted to refer to matters of public record when deciding a 12(b)(6) motion).

by burying in its prayer for relief a request that the Court cancel Talyst's U.S. Federal registration for the INSITE mark. However, since Talyst's right to use the INSITE mark is not challenged in the complaint, the Court does not have the power to order the cancellation of Talyst's federal registration for the INSITE mark.

Talyst respectfully requests that the Court dismiss all three of Provider's claims with prejudice because Provider has not alleged and cannot allege facts sufficient to support the conclusion that ONSITERX acquired secondary meaning. The Court should also dismiss Provider's prayer to cancel Talyst's INSITE registration because Provider has not challenged Talyst's right to use the INSITE mark, either factually or as part of a claim for relief.

## II.    DISCUSSION

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court explained the plaintiff's burden to plead a claim that can survive a motion to dismiss under Rule12(b)(6). The Court wrote: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level…" *Id*. In its complaint, the plaintiff must make "a 'showing' rather than a blanket assertion of entitlement to relief." *Id*. at 556 n. 3; *see also Id*. at 557 (Rule 8(2)(a) requires "that the 'plain statement' possess enough heft to sho[w] that the pleader is entitled to relief."). This standard applies to all civil actions and proceedings pursuant to the application of Fed. R. Civ. P. 8. *Ascroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009).

Plaintiff is also required to plead more than facts that are merely consistent with defendant's liability and must plead facts sufficient to show its claim for relief is plausible. *Id. at*

- 3 -

1949-50.  The Court is not required to accept as true legal conclusions, even those couched as factual allegations.  *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 1949.

A.    ALL OF PROVIDER'S CAUSES OF ACTION ARE LIMITED TO TRADEMARK INFRINGEMENT AND THUS ARE DUPLICATIVE

Provider has alleged three causes of action, namely for unfair competition under the Lanham Act, statutory trademark infringement, and common law unfair competition.  All three of these claims are essentially allegations of trademark infringement and thus are requesting duplicative relief.

The same test applies to trademark infringement regardless of whether the trademarks are registered or unregistered.  *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998); *Exxon Corp. v. Humble Exploration Co., Inc.*, 695 F.2d 96, 103 (5th Cir. 1983). Therefore, whether called unfair competition under 15 U.S.C. §1125(a), i.e. count one, or statutory trademark infringement under 15 U.S.C. § 1114, i.e. count two, the same standard will apply to determine if a mark is protectable and whether it is infringed.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  To establish trademark infringement under either 15 U.S.C. §1114 or §1125(a), Provider must establish that:  1) the mark is valid and legally protectable; 2) that it owns the mark; and 3) that Talyst's use of its mark is likely to create confusion concerning the origin of goods or services.  *Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008).

The third count for common law unfair competition is similarly just another way of alleging trademark infringement.  Common law unfair competition in Texas does not provide a separate basis for liability, but requires an independent substantive tort or other illegal conduct. *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000).  "It is legitimate and does

- 4 -

not constitute unfair competition for a person or firm to appropriate to itself all the customers it can obtain even to the extent of driving its competitor out of business, provided that the means used to do so do not contravene any law or violate a definite legal right of such a competitor." *W.G. Pettigrew Distributing Co. v. Borden, Inc.*, 976 F. Supp. 1043, 1058 (S.D. Tex. 1996).  The only independent substantive tort alleged in the complaint is for trademark infringement. (Complaint at ¶34-35).

Therefore, to the extent that Provider's Complaint fails to state a cause of action for trademark infringement, all three counts must be dismissed under Fed. R. Civ. P. 12(b)(6).

**B.  THE COMPLAINT FAILS TO ASSERT SUFFICIENT FACTS TO SUPPORT A CLAIM FOR TRADEMARK INFRINGEMENT**

The first count is nothing more that a recitation of the elements of the cause of action for unfair competition under the Lanham Act in a conclusory form.  (Complaint at ¶¶ 16-19).  As such, they are merely legal conclusions that, even if couched as factual allegations, the Court is not required to accept as true for purposes of this motion.  *Ascroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  While the complaint incorporates by reference all of the background facts into the first count, it does not provide any indication regarding what actions by Talyst is asserted to constitute unfair competition under the Lanham Act.  Thus, there is no sufficient factual basis for Provider's claim for violation of 15 U.S.C. §1125(a).

Further, nowhere in the Complaint are there sufficient factual assertions to support a claim for trademark infringement, whether under 15 U.S.C. § 1114 or as unfair competition under either the Lanham Act or Texas common law.  Specifically, there are insufficient factual allegations to support the conclusion that Provider owned a legally protectable trademark interest in the ONSITERX mark at the time and in the geographic area in which Talyst began using the INSITE and/or the INSITERX marks.

- 5 -

Provider has alleged that it filed and received a registration for its ONSITERX mark, however, such registration was on the supplemental register. (Complaint at ¶ 7). A registration on the supplemental register does nothing to enlarge the substantive rights of the registrant. *Clairol, Inc. v. Gillette Co*., 389 F.2d 264, 267 (2d Cir. 1968). The fact that the ONSITERX mark was only registered on the supplemental register reflects the PTO's determination that the ONSITERX mark is not inherently distinctive of Provider's goods.[2] *Clairol*, 389 F.2d at 269 n. 9; *Novartis Consumer Health, Inc. v. McNeil-PPC, Inc*., 53 U.S.PQ.2d 1406, 1410 (D.N.J. 1999); *Cf*., 15 U.S.C. § 1091(a) (marks registerable on the supplemental register are limited to those not registerable on the principal register). Registration on the supplemental register can also "be deemed an admission against interest that the term is not inherently distinctive." *Novartis Consumer Health*, 53 U.S.P.Q.2d at 1410; *Cf., Yamaha Intern. Corp. v. Hoshino Gakki Co., Ltd.,* 840 F.2d 1572, 1577 (Fed. Cir. 1988) (amending to claim acquired distinctiveness under §2(f) is a concession the mark is not inherently distinctive). Therefore, the ONSITERX mark is not a protectable mark without evidence that it has acquired secondary meaning in some geographical area.

Provider has not alleged sufficient facts regarding its use of the ONSITERX mark to support the conclusion that the ONSITERX mark has acquired secondary meaning, much less that it acquired secondary meaning prior to the first use of the INSITE and/or INSITERX mark by Talyst. *Cf., Tone Bros, Inc. v. Sysco Corp.*, 28 F.3d 1192 (Fed. Cir. 1994) (senior user must acquire secondary meaning before junior user starts use). Nor has Provider identified the geographic scope in which the ONSITERX allegedly has acquired secondary meaning. *Test*

---

[2] Provider alleges that the ONSITERX mark is inherently distinctive solely with respect to the second count, however, such allegation is nothing more than a legal conclusion. In contrast, the fact that the mark was registered only on the supplemental register establishes that the U.S.P.T.O. has determined and Provider has admitted that the mark is not inherently distinctive.

*Masters Educational Services v. Singh,* 428 F.3d 559, 576 (5th Cir. 2005) (relevant inquiry for secondary meaning is "the primary significance of the term in the minds of the consuming public *of the relevant geographical market*.")(emphasis in original); *Grupo Gigante SA de CV v. Dallo & Co., Inc.*, 391 F.3d 1088, (9th Cir. 2004) ("priority of use in one geographic area within the United States does not necessarily suffice to establish priority in another area.").

In determining whether a mark has acquired secondary meaning, the Court may consider a number of factual issues, including:  1) survey evidence of the attitude of consumers toward the mark 2) the length and manner of use of the mark; 3) the nature and extent of advertising and promotion of the mark; 4) the sales volume of the product; 5) and instances of actual confusion. *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir. 1999).  With respect to advertising, the question is not the extent of such advertising, but its effectiveness in altering the meaning of the mark to the consuming public.  *Security Center Ltd. v. First National Security Centers*, 750 F.2d 1295, 1301 (5th Cir. 1985) (reversing judgment because promotional efforts over two years were not sufficient as a matter of law to establish secondary meaning).  Provider has not alleged sufficient facts under the above categories that the Court could use to support the conclusion that the ONSITERX mark has acquired secondary meaning.  *Cf., Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 576 (5th Cir. 2005) (dismissing claim due to a lack of alleged facts since the prior case to support a finding of secondary meaning).

Provider has alleged that it began using the ONSITERX mark in March of 2008. However, there is no allegation regarding the nature and extent of that use and mere use of a descriptive mark is not sufficient to establish secondary meaning in a geographic area.  *Test Masters Educational Services v. Singh,* 428 F.3d 559, 566 (5th Cir. 2005).  Nor is use over a two year period necessarily sufficient to establish secondary meaning.  *Bank of Texas v. Commerce*

*Southwest, Inc.*, 741 F.2d 785, (5th Cir. 1984) (finding no secondary meaning as a matter of law despite exclusive use for nine years); *Co-Rect Products, Inc. v. Marvy! Advertising Photography, Inc.*, 780 F.2d 1324, 1332 (8th Cir.) (distribution of 75,000 brochures over 10 months insufficient to establish secondary meaning).

While Provider has alleged that it does substantial business in Pennsylvania, it has not alleged that the ONSITERX mark has acquired secondary meaning in Pennsylvania, or that the alleged use of the ONSITERX mark starting in March 2008 was in Pennsylvania. (Complaint at ¶11 and 17). In fact, Provider has not even alleged that it has actually provided any goods or services under the ONSITERX mark or otherwise used the mark in commerce in Pennsylvania. *Cf.*, *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir. 1999) (amount of sales made using the mark is relevant to issue of secondary meaning). As a result, these facts are not sufficient to establish that Provider has used the ONSITERX mark extensively enough in a particular geographic area for the mark to have acquired secondary meaning.

Even Provider's conclusory allegation in its second count that the ONSITERX mark has acquired secondary meaning, if not dismissed as just a legal conclusion couched as a factual allegation, still does not establish that Provider's claim is probable as opposed to merely being possible. (Complaint at ¶ 23). There is no factual allegation that the ONSITERX mark acquired secondary meaning in a particular geographic area by a date that is prior to the first use of the INSITE or INSITERX marks in that geographic area. *Cf., Tone Bros, Inc. v. Sysco Corp.*, 28 F.3d 1192 (Fed. Cir. 1994) (senior user must acquire secondary meaning before junior user starts use). If Provider did not acquire secondary meaning in the ONSITERX mark until after Talyst began using the INSITE and/or INSITERX marks, which is consistent with Provider's current factual allegations, there could not be any liability for trademark infringement. *Cf., Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 554 (2008) (factual allegation of parallel conduct insufficient because it is consistent with independent actions as well as a conspiracy).  Similarly, if the ONSITERX mark acquired secondary meaning in a geographic area that was remote from where Talyst is using the INSITE and INSITERX marks, then there cannot be any infringement. *Greupo Gigante SA de CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1096 (9th Cir. 2004) (priority of use in one geographic area does not suffice to establish priority in another area).  Therefore, this conclusory assertion is merely consistent with Provider's trademark infringement claim and does not render the claim plausible.

Because Provider has failed to allege sufficient facts to establish that it has a protectable interest in the ONSITERX mark prior to the time Talyst started using the INSITE and/or INSITERX marks in any particular geographic area, it has not sufficiently stated a claim upon which relief can be granted for statutory trademark infringement or unfair competition under the Lanham Act or Texas common law.

The Court should not grant Provider leave to further amend its complaint because it would be futile.  *Forman v. Davis*, 371 U.S. 178, 182 (1962).  Provider acknowledges that Talyst began using the INSITE mark in commerce at least by May of 2008.  (Complaint at ¶8).  In its trademark application for the ONSITERX trademark, Provider does not allege a date of first use in commerce prior to October 24, 2008.  *See* U.S. Reg. No. 3,726,808, courtesy copy attached as Ex. 1.[3]  The ONSITERX mark cannot have acquired secondary meaning in any geographical area prior to the date it was first used in commerce.  *Cf., Tone Bros, Inc. v. Sysco Corp.*, 28 F.3d 1192 (Fed. Cir. 1994) (senior user must acquire secondary meaning before junior user starts use).  Thus, it would be futile to allow Provider an attempt to further amend its complaint to try and

---

[3] The Court has the ability to take judicial notice of the contents of the trademark registration asserted to be infringed in the complaint.  *Test Masters Educational Services v. Singh,* 428 F.3d 559, 570 Fn. 2 (5th Cir. 2005) (Federal Courts are permitted to refer to matters of public record when deciding a 12(b)(6) motion).

allege sufficient facts to conclude that it acquired secondary meaning in the ONSITERX mark prior to the date that Talyst first began use of the INSITE mark.

### C.   THE COURT DOES NOT HAVE THE POWER TO CANCEL TALYST'S INSITE TRADEMARK REGISTRATION

"Under the Lanham Act, district courts have the power to cancel registrations, but only in an action involving a registered mark." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 828 F.2d 755, 758 (Fed. Cir. 1987), citing 15 U.S.C. § 1119.  "Involving cannot mean the mere presence of a registered trademark, but must be read as involving the right to use the mark and thus the right to maintain the registration."  *Id.; Ditri v. Coldwell Banker Residential Affiliates, Inc.,* 954 F.2d 869, 873 (3rd Cir. 1992).

As the current case does not involve Talyst's registered INSITE trademark as required by 15 U.S.C. § 1119, the Court does not have the power to cancel this registration as requested in the prayer for relief.  *Cf., Eagles Ltd. v. American Eagle Foundation*, 356 F.3d 724, 730 (6th Cir. 1992) (Court does "not have the authority to decide issues regarding a mark that was not properly before it.").  Provider's complaint does not contain any cause of action for the cancellation of Talyst's registered INSITE trademark.  The complaint does not even provide the factual basis necessary for any claim to relief that relates to Talyst's right to use the registered INSITE trademark or the right to maintain its registration in that mark.  Therefore, because the complaint does not involve the INSITE registration or Talyst's right to use the registered INSITE trademark, the Court does not have the authority to cancel Talyst's INSITE registration and should dismiss Provider's request in its Prayer for Relief to do so.

### III.   CONCLUSION

For the reasons discussed above, Talyst respectfully requests the Court dismiss Provider's Complaint because it fails to state a cause of action upon which relief can be granted.

Respectfully submitted,

/s/ W. Scott Hastings

_____

**W. Scott Hastings**
  State Bar No. 24002241
**Mark R. Backofen**
  State Bar No. 24031838
**LOCKE LORD BISSELL & LIDDELL LLP**
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 740-8000
Facsimile:  (214) 740-8800

**ATTORNEYS FOR PLAINTIFF
TALYST, INC.**

<u>**Certificate of Service**</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service, including counsel listed below, are being served with a copy of this document on April 5, 2010 via the Court's CM/ECF system per Local Rule L.R. 5.1(d).

  Mack Ed Swindle
  Thomas F. Harkins, Jr.
  Whitaker, Chalk, Swindle
   & Sawyer, LLP
  301 Commerce Street, #3500
  Fort Worth, Texas 76102-4186

/s/ W. Scott Hastings

_____

W. Scott Hastings

- 11 -

DAL 1922936